UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:23-CR-535 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| DANIEL KOVACIC, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

Before the Court is Defendant's Motion for Review and Revocation of the Magistrate

Judge's Order of Detention.  (ECF #31.)

BACKGROUND HISTORY

Defendant was charged in a September 20, 2023 indictment with one count of Felon in

Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8).  The charge stems

from an incident occurring on August 17, 2023 in Wickliffe, Ohio.  Defendant was arrested on

September 27, 2023 and arraigned the same day.  The Government moved for detention and

Defendant was remanded into custody pending an October 4, 2023 detention hearing.

At the detention hearing, the Government proffered its Memorandum in Support of

Pretrial Detention (ECF #9), the Pretrial Services Report (ECF #5) and provided the facts of the

case.  (ECF #21, Transcript.)  According to the facts in the proffer and the Government's

description, on August 17, 2023 at approximately 4:10 p.m., multiple 911 calls were received

regarding gun shots fired by residents in the area of 1500 Ridgewick Drive, an apartment

complex of side-by-side units sharing common walls.  *Id.*  Upon police arrival, multiple residents reported hearing gunshots.  *Id.*  One resident identified Defendant's apartment as the source of the gunshots.  *Id.*  Police then set up a perimeter.  *Id.*

The residents reported that two to three shots had been fired.  *Id.*  Additionally, a neighbor indicated that Defendant had pulled a firearm on him with a laser sight and pointed it at his chest during a recent prior confrontation.  *Id.*  Police attempted to contact Defendant through cell phone calls, text messages and through a PA system.  Defendant did not respond.  *Id.*

At approximately 5:05 p.m., Defendant's girlfriend was seen leaving Defendant's residence.  *Id.*, (ECF #31, Motion.)[1]  She was ordered to the ground, questioned and she volunteered that Defendant was inside the residence asleep on the couch.  *Id.*  She also told police that she had seen a firearm in the house in prior weeks, Defendant had been suffering from increased paranoia, he might have lost his job that day and could be under the influence of alcohol.  *Id.*  The police also spoke to Defendant's mother and father who indicated they had concerns about his well-being and safety.  *Id.*  His mother added that he had sent a text message threatening to kill "the enemies of the white race."  At approximately 9:00 p.m., police were able to contact Defendant over a PA system and Defendant was taken into custody without incident.

Because the charge against Defendant did not carry a presumption of detention the Government was required to show by clear and convincing evidence Defendant was a danger to the community or by a preponderance of the evidence that Defendant was a flight risk to justify its detention request.  After hearing from counsel for the Government and Defendant the Court issued its order of detention the following day:

---

[1] The Court notes that some of the details were not available to the Magistrate Judge at the detention hearing but have been supplied by replacement defense counsel in subsequent filings.

I find that the testimony and information submitted at the detention hearing establishes by clear and convincing evidence that based upon the nature of the Defendant's arrest for the instant offense; the allegation of a weapon being discharged during the instant offense; the Defendant's prior arrests and convictions; the Defendant's substance abuse history and alleged use during the instant offense; his mental health history; his conduct in court with his attorney and with the US Marshals; safety concerns for the community; his violent behavior history; the allegation of his being connected to white supremacist groups; and the Defendant's text messages threatening to kill "the enemies of the white race" that were sent while the police were surrounding his residence; there is no condition or combination of conditions that will reasonably assure the safety of the community.

(ECF #11.)

On March 15, 2024, Defendant moved to revoke his order of detention.  (ECF #25.)  The Court referred the Motion to the Magistrate Judge for ruling and on April 9, 2024, the Magistrate Judge denied Defendant's Motion.  (ECF #30.)  Defendant now moves the Court to review the order of detention and to release the Defendant on bond.

### STANDARD OF REVIEW

A defendant may challenge a Magistrate Judge's detention order before a District Judge under 18 U.S.C. § 3145(b).  That statute permits a court with "original jurisdiction over the offense" to consider "a motion for revocation or amendment" of the Magistrate Judge's detention order.  *Id.*  District courts review a magistrate judge's release or detention order de novo.  *United States v. Tripplett,* No. 1:19CR700, 2020 U.S. Dist. LEXIS 212642, 2020 WL 6702118, at *1 (N.D. Ohio Nov. 13, 2020) (citing *United States v. Alexander,* 742 F. Supp. 421, 423 (N.D. Ohio 1990)).  On review, the district court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge."  *United States v. Yamini,* 91 F. Supp. 2d 1125 (S.D. Ohio 2000) (citing *United States v. Maull,* 773 F.2d 1479, 1482 (8th Cir. 1985)).

Under the Bail Reform Act, "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'"

*United States v. Stone,* 608 F.3d 939, 947 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)).  As to risk of flight, the United States must carry its burden by a preponderance of the evidence.  *United States v. Hinton,* 113 F. App'x 76, 77 (6th Cir. 2004).  With respect to dangerousness, however, the United States must present clear and convincing evidence to prevail.  *Stone,* 608 F.3d at 946 (citing 18 U.S.C. § 3142(f)(2)(B)).  In meeting its burden the Government may proceed by proffer or hearsay.  *Stone,* 608 F.3d at 948-49 (citation omitted).

Under § 3142(g) the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including — (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

**A.  Nature and Circumstances of Offense Charged**

The nature and circumstances of the charged offense support detention.  The Sixth Circuit has held that in general, being a felon in possession is not a crime of violence.  *United States v. Slocum,* No. 2:23-CR-072, 2023 WL 6880375, at *4 (S.D. Ohio Oct. 18, 2023)(citing *United States v. Hardon,* 149 F.3d 1185 (Table), 1998 WL 320945 (6th Cir. June 4, 1998)).  Defendant argues the charged conduct does not carry a presumption of detention.  In addition, Defendant notes the Magistrate Judge ordered detention in part due to Defendant's purported sending of threatening texts while the police surrounded his residence.  Having the benefit of discovery,

Defendant can show he did not send the text message threatening to kill "the enemies of the white race" at the time the police surrounded his residence.  Instead, evidence demonstrates he sent the threatening text messages to his mother approximately forty-five minutes before the 911 call to police.

Defendant emphasizes that no witness reported that shots were fired at an individual or property.  He adds that the police did not approach Defendant's residence nor was Defendant "barricaded" in his apartment.  There is no evidence that Defendant was in a standoff with police.  Instead, after the police arrived, Defendant's girlfriend left the residence and was taken into custody.  She informed officers that Defendant was asleep and that she did not observe any firearm in the residence.  Several hours later Defendant surrendered without incident.

Despite Defendant's benign description of the encounter, the Government's proffer and argument at the October 4, 2023 detention included hearing a number of witnesses reported multiple shots being fired in the apartment complex.  (ECF # 21.)  Discharging a firearm in a residential area is dangerous per se.  "The inherent danger caused by the reckless discharge of a firearm into the air, and the obvious ricochet effect that may occur when bullets fall to the ground, are matters of common sense."  *United States v. Naylor*, No. CV 21-398, 2024 WL 617659, at \*3 (W.D. Pa. Feb. 14, 2024).

**B.  Weight of the Evidence**

Relying on *USA v. Stone*, Defendant asserts that the weight of the evidence must go to the evidence of dangerousness and not evidence of Defendant's guilt.  The evidence presented by the Government is largely not in dispute.  Defendant counters, however, at the detention hearing and in subsequent motion practice, that the original state charges stemming from the incident reflect low-level felonies that do not rise to the level of a crime of violence, his history of compliance

5

with terms and conditions of release and the willingness of his mother to stand in as a custodial supervisor augur against dangerousness.

The Court finds the weight of the evidence of dangerousness is compelling, despite Defendant's history of compliance with terms and condition of release. At the time of the offense, Defendant was not on probation, parole or on release for any offense. However, he was under disability. The Court cannot simply ignore the inherent dangerousness of discharging a firearm into the air, especially when Defendant was barred from possession of a firearm in the first place. There is not only a risk of ricochet, as noted in *Naylor, infra,* but a real risk of striking a person directly, causing serious injury or death. Compliance with prior terms and conditions of release is not prophylactic of dangerousness when Defendant has shown a willingness to violate laws prohibiting firearm possession. Likewise, a custodial supervisor does not excuse a demonstrated willingness to flout firearm laws.

### C. History and Characteristic of Defendant

Defendant relates he is thirty-three years old with a stable residence for the past three years in Wickliffe, Ohio. He has a supportive family and would have a place to return to if released. Prior to his 2009 conviction, Defendant did not have any serious involvement with the criminal justice system. He was sentenced to a term of ten years imprisonment for Felonious Assault, Drug Possession and Assault. In January of 2020, Defendant was granted Judicial Release and was placed on probation for three years. He was released from community control in February of 2023.

The Magistrate Judge correctly noted that Defendant had previously failed to appear in 2009. However, when Cuyahoga County issued its capias on November 25, 2009, Defendant

was already in the custody of Lake County the day before.  Thus, it was not issued for his failure to appear and does not militate in favor of detention.

Defendant notes he was originally charged for this offense in state court and was released on bond.  He appeared for every court date over a month and a half and complied with all the terms and conditions of his release.  Moreover, while incarcerated he obtained an Associate's and Bachelor's Degrees from Ashland University.  He adds he is willing to participate in any drug or mental health program deemed appropriate by pretrial services.  He touts strong ties to the community as a member of the Knights of Columbus and regularly volunteers with them.  He was gainfully employed for three years prior to this incident and his mother has agreed to accept custodial responsibility for Defendant.

While all these things show a supportive family and an impressive record of accomplishments, Defendant's criminal history, substance abuse, mental health history and threats against the community all favor detention.

The Pretrial Services Report indicates that Defendant has reported increasing substance abuse in the last few years.  His mental health is a concern, particularly with regard to the violent nature of the text messages reflecting a desire to kill "all enemies of the white race." Additionally, Defendant's recent unemployment and his own parents' concern for his well-being support the conclusion that detention is appropriate.

His criminal background reflects that he was charged with Assault on a Police Officer and, while on bond for that offense, was charged with Drug Possession charge and, while on continued bond, was charged with Felonious Assault charge.  (ECF # 21).  Lastly, threatening a neighbor at gunpoint exhibits dangerousness to the community at large.

**D.  Nature and Seriousness of Dangers to Others if Released**

The facts and circumstances surrounding Defendant's arrest militate strongly in favor of detention.  The inherent danger of discharging a firearm in a residential area, threatening a neighbor with a gun, possession of a firearm while under a disability and the additional concern that a search of his apartment recovered two calibers of ammunition but only one firearm raises the specter of easy access to another firearm.  (ECF # 21).  The Court agrees with the Magistrate Judge's finding on review that whether Defendant's violent and threatening text messages were sent during or forty minutes prior to the police arrival at the apartment complex makes little difference as the messages themselves present a threat to the surrounding community at large. Defendant's criminal history includes assault, and additional charged criminal conduct while out on bond.  His increasing substance abuse issues and threats against the community at large present serious concerns for the public.

### CONCLUSION

De novo review of the arguments and evidence vis-à-vis the § 3142(g) lead the Court to conclude the Government has met its burden to show by clear and convincing evidence that Defendant presents a danger to others and the community.  There is no condition or combination of conditions that can reasonably assure the safety of the community.  Defendant's motion is DENIED.

**IT IS SO ORDERED.**

**/s  Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: August 28, 2024**